# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No. 12-md-02311 |
| | Honorable Marianne O. Battani |

| | |
|---|---|
| In Re: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02701 |
| In Re: ALTERNATORS | Case No. 2:13-cv-00701 |
| In Re: CERAMIC SUBSTRATES | Case No. 2:15-cv-13634 |
| In Re: FUEL INJECTION SYSTEMS | Case No. 2:15-cv-11828 |
| In Re: FUEL SENDERS | Case No. 2:16-cv-03801 |
| In Re: HEATER CONTROL PANELS | Case No. 2:17-cv-13785 |
| In Re: IGNITION COILS | Case No. 2:13-cv-02201 |
| In Re: INSTRUMENT PANEL CLUSTERS | Case No. 2:15-cv-11827 |
| In Re: OXYGEN SENSORS | Case No. 2:15-cv-13423 |
| In Re: POWER WINDOW MOTORS | Case No. 2:12-cv-00301 |
| In Re: RADIATORS | Case No. 2:12-cv-00401 |
| In Re: SPARK PLUGS | Case No. 2:13-cv-01401 |
| In Re: STARTERS | Case No. 2:15-cv-11830 |
| In Re: VALVE TIMING CONTROL DEVICES | Case No. 2:12-cv-00201 |
| | Case No. 2:12-cv-03101 |
| In Re: WINDSHIELD WASHERS SYSTEMS | Case No. 2:13-cv-02301 |
| In Re: WINDSHIELD WIPER SYSTEMS | Case No. 2:15-cv-11829 |
| In Re: WIRE HARNESS PRODUCTS | Case No. 2:13-cv-01001 |
| | Case No. 2:17-cv-13147 |
| | Case No. 2:15-cv-03001 |
| | Case No. 2:13-cv-01101 |
| | Case No. 2:13-cv-02501 |
| | Case No. 2:17-cv-13158 |
| | Case No. 2:13-cv-02801 |
| | Case No. 2:13-cv-00901 |
| | Case No. 2:12-cv-00101 |

THIS DOCUMENT RELATES TO:
ALL DIRECT PURCHASER ACTIONS

_____/

## MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH THE DENSO DEFENDANTS AND FOR PROVISIONAL CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASSES

Direct Purchaser Plaintiffs in the above-captioned cases ("Plaintiffs") hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the proposed settlements with Defendants DENSO Corporation, DENSO International America, Inc., DENSO Korea Corporation (f/k/a separately as DENSO International Korea Corporation and DENSO Korea Automotive Corporation), DENSO Automotive Deutschland GmbH, DENSO Products and Services Americas, Inc., ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc. and ASMO Manufacturing, Inc. (collectively, "DENSO" or the "DENSO Defendants") and for provisional certification of the Settlement Classes. In support of this motion, Plaintiffs rely on the accompanying memorandum of law, which is incorporated by reference herein.

The parties do not request a hearing for this motion. DENSO consents to this motion and to the entry of the proposed order preliminarily approving the proposed settlements and provisionally certifying the Settlement Classes.

DATED: April 2, 2019                    Respectfully submitted,

                                         /s/David H. Fink
                                        David H. Fink (P28235)
                                        Darryl Bressack (P67820)
                                        Nathan J. Fink (P75185)
                                        FINK BRESSACK
                                        38500 Woodward Ave; Suite 350
                                        Bloomfield Hills, MI 48304
                                        Telephone: (248) 971-2500

                                        *Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No. 12-md-02311 Honorable Marianne O. Battani |

| | |
|---|---|
| In Re: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02701 |
| In Re: ALTERNATORS | Case No. 2:13-cv-00701 |
| In Re: CERAMIC SUBSTRATES | Case No. 2:15-cv-13634 |
| In Re: FUEL INJECTION SYSTEMS | Case No. 2:15-cv-11828 |
| In Re: FUEL SENDERS | Case No. 2:16-cv-03801 |
| In Re: HEATER CONTROL PANELS | Case No. 2:17-cv-13785 |
| In Re: IGNITION COILS | Case No. 2:13-cv-02201 |
| In Re: INSTRUMENT PANEL CLUSTERS | Case No. 2:15-cv-11827 |
| In Re: OXYGEN SENSORS | Case No. 2:15-cv-13423 |
| In Re: POWER WINDOW MOTORS | Case No. 2:12-cv-00301 |
| In Re: RADIATORS | Case No. 2:12-cv-00401 |
| In Re: SPARK PLUGS | Case No. 2:13-cv-01401 |
| In Re: STARTERS | Case No. 2:15-cv-11830 |
| In Re: VALVE TIMING | Case No. 2:12-cv-00201 |
| CONTROL DEVICES | Case No. 2:12-cv-03101 |
| In Re: WINDSHIELD WASHERS SYSTEMS | Case No. 2:13-cv-02301 |
| In Re: WINDSHIELD WIPER SYSTEMS | Case No. 2:15-cv-11829 |
| In Re: WIRE HARNESS PRODUCTS | Case No. 2:13-cv-01001 |
| | Case No. 2:17-cv-13147 |
| | Case No. 2:15-cv-03001 |
| | Case No. 2:13-cv-01101 |
| | Case No. 2:13-cv-02501 |
| | Case No. 2:17-cv-13158 |
| | Case No. 2:13-cv-02801 |
| | Case No. 2:13-cv-00901 |
| | Case No. 2:12-cv-00101 |

THIS DOCUMENT RELATES TO:
ALL DIRECT PURCHASER ACTIONS

_____/

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH THE DENSO DEFENDANTS AND FOR PROVISIONAL CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASSES

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF ISSUES PRESENTED........................................................... vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................ vii

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND ............................................................................. 1

III.   TERMS OF THE SETTLEMENT AGREEMENT ........................................ 2

       A.    The Proposed Settlement Classes ........................................... 3

       B.    The Settlement Amount ....................................................... 8

       C.    Release ........................................................................... 8

       D.    Cooperation ..................................................................... 9

IV.    PRELIMINARY APPROVAL OF THE PROPOSED GLOBAL SETTLEMENT IS
       WARRANTED ............................................................................... 9

       A.    The Governing Standards. ................................................... 9

       B.    The Proposed Global Settlement Provides Valuable Benefits to the Settlement
             Classes.......................................................................... 11

       C.    Consideration of the Final Approval Factors Supports Preliminary Approval of
             the Proposed Global Settlement........................................... 12

             1.    The Class Representatives and Class Counsel Have Adequately
                   Represented the Classes, and the Global Settlement was Reached at Arm's
                   Length. .................................................................... 14

             2.    The Relief Provided to the Settlement Classes is Adequate. .................. 16

                   a.   The Costs, Risks, and Delay of Trial and Appeal. .............................. 17

                   b.   The Effectiveness of Any Proposed Method of Distributing Relief to
                        the Classes, Including the Method of Processing Class Member Claims, if
                        Required. .......................................................... 20

                   c.   The Terms of Any Proposed Award of Attorney's Fees, Including
                        Timing of Payment. ................................................ 21

                   d.   Separate Agreements Relating to the Proposed Global
                        Settlement. ......................................................... 21

             3.    The Global Settlement Treats Class Members Equitably Relative to Each
                   Other. ...................................................................... 21

             4.    The Settlement is Consistent with the Public Interest. .............................. 22

V.     PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER
       SETTLEMENT CLASSES IS WARRANTED.................................... 22

       A.    The Proposed Settlement Classes Satisfy Rule 23(a). ........................................ 23

i

1.    The Proposed Settlement Classes are Sufficiently Numerous. ................ 24

2.    There are Common Questions of Law and Fact. ..................................... 24

3.    Plaintiffs' Claims are Typical of Those of the Proposed Settlement
Classes. ................................................................................................... 25

4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the
Settlement Classes. ................................................................................. 26

B.    Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement
Purposes. ............................................................................................................... 27

1.    Common Legal and Factual Questions Predominate. .............................. 27

2.    A Class Action is Superior to Other Methods of Adjudication. .............. 28

C.    Plaintiffs Are Not Seeking Authorization To Send Notice At This Time. ........... 29

VI.   CONCLUSION ...................................................................................................... 31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................... 22, 27, 29

*Barry v. Corrigan*,
   79 F. Supp. 3d 712 (E.D. Mich. 2015) ........................................................ 24, 26

*Beale v. EdgeMark Financial Corp.*,
   1995 WL 631840 (N.D. Ill. Oct. 23, 1995) ......................................................... 30

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ................................................................................ 27

*Berry v. Sch. Dist. of City of Benton Harbor*,
   184 F.R.D. 93 (W.D. Mich. 1998) ........................................................................ 16

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ................................................................................................ 16

*Date v. Sony Electronics, Inc.*,
   2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) .......................................... 19, 23, 25

*Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................. 11, 19

*Dick v. Sprint Commc'ns*,
   297 F.R.D. 283 (W.D. Ky. 2014) .......................................................................... 15

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
   2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) .................................................... 24

*Ford v. Fed.-Mogul Corp.*,
   2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ................................................... 17, 19

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ................................................................................ 10

*Granada Invs. Inc. v. DWG Corp.*,
   962 F. 2d 1203 (6th Cir. 1992) ............................................................................. 22

*Griffin v. Flagstar Bancorp, Inc.*,
   2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .............................................. Passim

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) ................................................................................ 22

*Harris v. Reeves*,
   761 F. Supp. 382 (E.D. Pa. 1991) ........................................................................ 30

*Hillson v. Kelly Servs. Inc.*,
   2017 WL 279814 (E.D. Mich. 2017) .................................................................... 22

*Hoving v. Lawyers Title Ins. Co.*,
   256 F.R.D. 555 (E.D. Mich. 2009) ....................................................................... 27

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ................................................................................ 24

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F.Supp.2d. 336 (E.D. Pa. 2007) ............................................................... 15, 17

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311,
   2016 WL 9280050 (E.D. Mich. Nov. 28, 2016) ................................................... 13

iii

*In re Automotive Parts Antitrust Litig.* (*Wire Harness Products Cases*,
2017 WL 469734 (E.D. Mich. Jan. 4, 2017) ............................................................. 10

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................ Passim

*In re Cardizem CD Antitrust Litig*,
200 F.R.D. 297 (E.D. Mich. 2007) ............................................................................ 29

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ............................................................ 15

*In re Flat Glass Antitrust Litig.*,
191 F.R.D 472 (W.D. Pa. 1999) .......................................................................... 24, 25

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012) ............................................................................... 29

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y.2004) ............................................................................... 15

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................... 20

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................ 11, 12, 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y 1996) ............................................................................... 29

*In re Packaged Ice Antitrust Litig.*,
2011 WL 717519 (E.D. Mich. Feb 22, 2011) ...................................................... Passim

*In re Packaged Ice Antitrust Litig.*,
2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ............................................... 9, 10, 15

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ......................................................... 15

*In re Polyurethane Foam Antitrust Litig.*,
2015 WL 1639269 (N.D. Ohio Feb. 26, 2015), appeal dismissed ....................... 13, 14

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................................... 12

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ............................................................................. 27, 28

*In re Southeastern Milk Antitrust Litig.*, 2:07- CV-208,
2013 WL 2155379 (E.D. Tenn. May17, 2013) ........................................................... 15

*In re Southeastern Milk Antitrust Litig.*,
2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) .......................................................... 27

*In re Telectronics Pacing Sys. Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................ Passim

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ........................................................................ 23, 24, 25

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
2006 WL 1984363 (E.D. Mich. July 13, 2006) ..................................................... Passim

*IUE-CWA v. General Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ........................................................................... 17

*Lessard v. City of Allen Park*,
372 F. Supp. 2d 1007 (E.D. Mich. 2005) .................................................................. 17

*Marsden v. Select Medical Corp.*,
246 F.R.D. 480 (E.D. Pa. 2007) ........................................................ 24
*Olden v. Gardner*,
294 Fed. Appx. 210 (6th Cir. 2008) ................................................. 17
*Paper Systems Inc. v. Mitsubishi Corp.*,
193 F.R.D. 601 (E.D. Wisc. 2000) .................................................... 29
*Senter v. Gen. Motors Corp.*,
532 F.2d 511 (6th Cir. 1976) ........................................................... 26
*Sheick v. Auto. Component Carrier LLC*,
2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ....................... 17, 18, 19
*Sheick v. Automotive Component Carrier LLC*,
2010 WL 3070130 (E.D. Mich. Aug. 02, 2010) ......................... 15, 26
*Sims v. Pfizer, Inc.*,
2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ................................. 17
*Smith v. MCI Telecoms Corp.*,
1993 WL 142006 (D. Kan. April 28, 1993) ..................................... 20
*Sprague v. General Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ................................................. 23, 24, 25
*Thacker v. Chesapeake Appalachia, LLC*,
259 F.R.D. 262 (E.D. Ky. 2009) ...................................................... 23
*UAW v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ..................................................... 13, 26
*Van Horn v. Trickey*,
840 F.2d 604 (8th Cir. 1988) ........................................................... 16
*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ................................................. 17, 18, 19

**Rules**

Fed. R. Civ. P. 23 ................................................................. 13, 14, 30
Fed. R. Civ. P. 23(a) ................................................................. 23, 27
Fed. R. Civ. P. 23(a)(1) ..................................................................... 24
Fed. R. Civ. P. 23(a)(2) ............................................................... 24, 25
Fed. R. Civ. P. 23(a)(3) ............................................................... 25, 26
Fed. R. Civ. P. 23(a)(4) ............................................................... 26, 27
Fed. R. Civ. P. 23(b) ................................................................. 23, 27
Fed. R. Civ. P. 23(b)(3) ......................................................... 23, 27, 28
Fed. R. Civ. P. 23(c)(2)(B) .............................................................. 30
Fed. R. Civ. P. 23(e)(1)(A) ......................................................... 10, 29
Fed. R. Civ. P. 23(e)(1)(B) ......................................................... 10, 22
Fed. R. Civ. P. 23(e) ................................................................. Passim
Fed. R. Civ. P. 23(e)(2) ............................................................. Passim
Fed. R. Civ. P. 23(e)(3) ................................................................. 13
Fed. R. Civ. P. 23(g) ...................................................................... 26

**STATEMENT OF ISSUES PRESENTED**

1.  Whether the proposed settlements between Direct Purchaser Plaintiffs ("Plaintiffs") and Defendants DENSO Corporation, DENSO International America, Inc., DENSO Korea Corporation (f/k/a separately as DENSO International Korea Corporation and DENSO Korea Automotive Corporation), DENSO Automotive Deutschland GmbH, DENSO Products and Services Americas, Inc., ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc. and ASMO Manufacturing, Inc. (collectively, "DENSO" or the "DENSO Defendants"), as set forth in the Settlement Agreements between the Direct Purchaser Plaintiffs and the DENSO Defendants, are sufficiently fair, reasonable and adequate to warrant preliminary approval;

2.  Whether the Court should provisionally certify the Settlement Classes under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the settlements only; and

3.  Whether the Court should appoint Plaintiffs as the representatives for the Settlement Classes, and the law firms of Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman & Kodroff, P.C. as Co-Lead Class Counsel for the Settlement Classes ("Co-Lead Settlement Class Counsel").

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
   June 20, 2016)

*Date v. Sony Electronics, Inc.*,
   No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
   No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
   No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
   No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007)

## I.     INTRODUCTION

Plaintiffs, on behalf of Settlement Classes composed of direct purchasers of various motor vehicle parts in the seventeen above-captioned cases ("Collective Actions"), have reached a settlement with the DENSO Defendants that resolves the Collective Actions ("Global Settlement").[1] Under the terms of the proposed Global Settlement, DENSO will pay $2,100,000 ("Total Settlement Amount") and provide substantial cooperation to assist Plaintiffs in the prosecution of the claims against the remaining non-settling Defendants in the Collective Actions. The $2,100,000 Total Settlement Amount reflects the fact that DENSO is the ACPERA beneficiary in many of the Collective Actions.[2]

Plaintiffs respectfully move this Court for an order preliminarily approving the proposed Global Settlement with DENSO, and provisionally certifying the Settlement Classes for each of the seventeen Collective Actions. Plaintiffs will seek authorization to disseminate notice to members of the Settlement Classes pursuant to a plan to be submitted to the Court in separate motions later.  Plaintiffs will seek final approval separately for each of the seventeen Collective Actions at dates in the future.

## II.    BACKGROUND

Beginning in 2011, class action lawsuits were filed on behalf of direct purchasers of various motor vehicle parts manufactured and sold by the DENSO Defendants in the Collective Actions (*Air Conditioning Systems, Alternators, Ceramic Substrates, Fuel Injection Systems, Fuel Senders,*

---

[1] Exhibit 1 lists the seventeen Collective Actions, the named Plaintiffs representing the proposed Settlement Classes in each Collective Action, and the identity of the Defendants for each of the proposed Settlement Classes.

[2] *See* Antitrust Criminal Penalty Enhancement and Reform Act of 2004 (ACPERA), Pub. L. No. 108-237, § 213(a)–(b), 118 Stat. 661, 666–69 (June 22, 2004), as amended by Pub. L. No. 111-190, 124 Stat. 1275 (June 9, 2010) (leniency applicant's liability limited to single damages on its own sales).

*Heater Control Panels, Ignition Coils, Instrument Panel Clusters, Oxygen Sensors, Power Window Motors, Radiators, Spark Plugs, Starters, Valve Timing Control Devices, Windshield Washers Systems, Windshield Wiper Systems and Wire Harness Products*).

The central allegation in all of the Collective Actions is identical: in violation of Federal antitrust laws, Defendants conspired to raise, fix, maintain, and stabilize prices of, rig bids for, and allocate the supply of certain motor vehicle parts sold in the United States.  Plaintiffs further allege that as a result of the conspiracies, they and other direct purchasers of the motor vehicle parts at issue were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct.  Plaintiffs seek recovery of treble damages, together with reimbursement of costs and an award of attorney's fees.  DENSO denies these allegations and does not admit liability for the alleged violations of federal law in agreeing to the Global Settlement.

The cases that make up the Collective Actions were filed at different times and are at different procedural stages.  In all cases, however, Plaintiffs' Counsel have obtained sufficient information to weigh the strengths and weaknesses of the constituent cases in order to make an informed judgment that the Total Settlement Amount and the proposed allocation is fair, reasonable, and adequate to the members of each class in the Collective Actions.

Subject to Court approval, the Global Settlement with DENSO will fully resolve the following direct purchaser cases: *Wire Harness Products, Heater Control Panels, Instrument Panel Clusters, Fuel Senders, Windshield Washers Systems and Windshield Wiper Systems*.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

After lengthy arm's-length and good-faith negotiations between experienced and sophisticated counsel, and with the assistance of one of the Court-appointed mediators, Plaintiffs reached the Global Settlement with DENSO on February 4, 2019. As part of the settlement negotiations, the parties communicated extensively, and Plaintiffs' Counsel analyzed information

provided to them by the DENSO Defendants and by other Defendants, relevant industry data, and other pertinent information.  In addition, the merits of the parties' positions were discussed and evaluated.

The Global Settlement with DENSO is the result of these good-faith negotiations, based on factual investigation and legal analysis by experienced counsel, the recommendation of the Court-appointed mediator, and counsel's full understanding of the strengths and weaknesses of their claims and defenses and their clients' respective positions, including the fact that DENSO is the ACPERA beneficiary with respect to the Department of Justice's investigation concerning many of the Collective Actions.  Plaintiffs believe that the proposed Global Settlement and allocation of the Total Settlement Amount is fair, reasonable and adequate for the proposed Settlement Classes.

The material terms of the proposed settlement are summarized below.

**A.      The Proposed Settlement Classes**

Plaintiffs and DENSO seek certification of the Settlement Classes in all the Collective Actions, as follows:

*Air Conditioning Systems*

All individuals and entities who purchased Air Conditioning Systems in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2001 through February 14, 2017. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 2 at ¶ 17.

*Alternators*

All individuals and entities who purchased Alternators in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class

3

are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 3 at ¶ 17.

*Ceramic Substrates*

All individuals and entities who purchased Ceramic Substrates in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from July 1, 1999 through October 29, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 4 at ¶ 17.

*Fuel Injection Systems*

All individuals and entities who purchased Fuel Injection Systems in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint-ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 5 at ¶ 17.

*Fuel Senders*

All individuals and entities who purchased Fuel Senders in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2001 through December 27, 2016. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 6 at ¶ 17.

*Heater Control Panels*

All individuals and entities who purchased Heater Control Panels in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or

joint ventures) from January 1, 2000 through March 23, 2017. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 7 at ¶ 17.

*Ignition Coils*

All individuals and entities who purchased Ignition Coils in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 8 at ¶ 17.

*Instrument Panel Clusters*

All individuals and entities who purchased Instrument Panel Clusters in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 1998 through December 27, 2016. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 9 at ¶ 17.

*Oxygen Sensors*

All individuals and entities who purchased Oxygen Sensors in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through February 4, 2019. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 10 at ¶ 17.

*Power Window Motors*

All individuals and entities who purchased Power Window Motors in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through July 19, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 11 at ¶ 17.

*Radiators*

All individuals and entities who purchased Radiators in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 1998 through August 14, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 12 at ¶ 17.

*Spark Plugs*

All individuals and entities who purchased Spark Plugs in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through February 4, 2019. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 13 at ¶ 17.

*Starters*

All individuals and entities who purchased Starters in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 14 at ¶ 17.

6

*Valve Timing Control Devices*

All individuals and entities who purchased Valve Timing Control Devices in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 15 at ¶ 17.

*Windshield Washers Systems*

All individuals and entities who purchased Windshield Washers Systems in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through August 14, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 16 at ¶ 17.

*Windshield Wiper Systems*

All individuals and entities who purchased Windshield Wiper Systems in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through August 14, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 17 at ¶ 17.

*Wire Harness Products*

All individuals and entities who purchased Wire Harness Products in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through December 13, 2016. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 18 at ¶ 17.

**B.** **The Settlement Amount**

The Total Settlement Amount is $2,100,000. DENSO will pay the settlement funds into an interest-bearing escrow account, and the funds shall thereafter be transferred to separate escrow accounts established for each of the Collective Actions. *See*, *e.g.* Exhibit 2 at ¶ 32.[3] The Total Settlement Amount will be allocated as follows: $326,216.74 to the *Heater Control Panels* case, $273,783.26 to the *Wire Harness Products* case, and $100,000 to each of the fifteen other Collective Actions.

**C.** **Release**

The settlement agreements in the Collective Actions uniformly provide, *inter alia*, for the release by Plaintiffs and the other members of the Settlement Classes of certain claims against the DENSO Defendants and other "Releasees" (as defined in the Settlement Agreements) concerning price fixing, bid-rigging, or market, customer or supply allocation of the subject products that were purchased in the United States directly from a Defendant (or their subsidiaries, affiliates, or joint ventures) during the relevant class periods.

The release specifically excludes certain claims against the DENSO Defendants, including claims based on indirect purchases of the subject auto parts; claims based on negligence, personal injury, or product defects; and claims relating to purchases of the subject parts outside the United States. *See*, *e.g.*, Exhibit 2 at ¶ 22.

---

[3] All of the settlement agreements in the Collective Actions provide that DENSO's sales to members of the proposed Settlement Classes remain in the case as a potential basis for joint-and-several liability and damages against remaining non-settling Defendants and co-conspirators. *See*, *e.g.*, Exhibit 2 at ¶ 49.

### D.     Cooperation

While the proposed Global Settlement with the DENSO Defendants will fully resolve the

*Fuel Senders*, *Heater Control Panels*, *Instrument Panel Clusters*, and *Wire Harness Products*

Collective Actions if approved, it is only a partial settlement of the claims in the *Air Conditioning*

*Systems*, *Alternators*, *Ceramic Substrates*, *Fuel Injection Systems*, *Ignition Coils*, *Oxygen Sensors*,

*Power Window Motors*, *Radiators*, *Spark Plugs*, *Starters*, *Valve Timing Control Devices*,

*Windshield Washer Systems*, and *Windshield Wiper Systems* Collective Actions in which non-

settling Defendants remain. Plaintiffs will continue to prosecute those cases against the remaining

Defendants. DENSO has agreed to assist Plaintiffs in the prosecution of the lawsuit against the

remaining Defendants by providing the following types of cooperation: (a) the production of

documents, data and other information potentially relevant to Plaintiffs' claims; (b) assistance in

understanding information produced to Plaintiffs and facilitating the use of such information at

trial; (c) meetings between Settlement Class Counsel and the DENSO Defendants' attorneys, who

will provide information relevant to the claims in ongoing cases; (d) witness interviews; (e)

depositions; and (f) trial testimony. *See*, *e.g.*, Exhibit 2 at Appendix A.

## IV.    PRELIMINARY APPROVAL OF THE PROPOSED GLOBAL SETTLEMENT IS WARRANTED

### A.     The Governing Standards.

Approval of a class action settlement involves a three-step process: "(1) the court must

preliminarily approve the proposed settlement, (2) members of the class must be given notice of

the proposed settlement, and (3) after holding a hearing, the court must give its final approval of

the settlement." *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No.

497, at 8 (E.D. Mich. June 20, 2016) (quoting *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d

985, 1026 (S.D. Ohio 2001)). *See also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952,

2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010); *Manual For Complex Litig. (Fourth)* § 21.63 (2004).

Recent amendments to Rule 23 (effective December 1, 2018) have codified the preliminary approval process. First, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (1) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The amended Rule 23(e) preliminary approval procedure is substantively the same as that previously approved in the Sixth Circuit and applied by this Court in prior *Auto Parts Litigation* settlements, namely a preliminary two-part determination that (1) the settlement is approvable, and (2) the settlement class can be certified. *See*, *e.g.*, *In re Automotive Parts Antitrust Litig.* (*Wire Harness Products Cases*), 2017 WL 469734, at *1 (E.D. Mich. Jan. 4, 2017) (granting preliminary approval upon preliminary determinations that the settlement was approvable and a settlement class could be certified); *Packaged Ice*, 2010 WL 3070161 at *4 (determining "whether the proposed settlement has the 'potential' for final approval and … whether there is reason enough to notify class members and to proceed with a fairness hearing") (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

The court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Telectronics,* 137 F. Supp. 2d at 1026. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the

10

class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F. Supp. 2d at 1015 (quoting *Manual for Complex Litig. (Second)* §30.44 (1985)); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that it will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483, 495-96 (E.D. Mich. 2008). The final determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement are assessed under the applicable final approval factors. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

### B. The Proposed Global Settlement Provides Valuable Benefits to the Settlement Classes.

The Global Settlement provides for a cash payment by DENSO of $2,100,000, which will be allocated as discussed above. Both the Total Settlement Amount and allocated settlement amounts constitute a meaningful recovery and reflect consideration of information obtained through Settlement Class Counsel's factual investigation and legal analysis for all the Collective Actions.

Another important aspect of the Global Settlement is the substantial amount of meaningful cooperation that DENSO has agreed to provide in those Collective Actions where non-settling Defendants remain. *See, e.g.*, *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 ("Of great importance in the Court's assessment is the provision in the Settlements requiring discovery cooperation of certain Settling Defendants."). Cooperation is a "substantial benefit" to the class

11

when settling with fewer than all defendants. *Linerboard*, 292 F. Supp. 2d at 643. The cooperation to be provided by DENSO under the settlement agreements in the Collective Actions provides just such a substantial benefit to the class. *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *10 (E.D. Mich. Feb 22, 2011); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment").

### C. Consideration of the Final Approval Factors Supports Preliminary Approval of the Proposed Global Settlement.

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and finding that the settlement is "fair, reasonable, and adequate." *See Packaged Ice*, 2011 WL 717519, at *8. As noted above, the Court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would.  Here, initial consideration of the final approval factors supports preliminary approval of the Global Settlement and proposed allocation of the Total Settlement Amount.

The 2018 amendments to Rule 23(e) sets forth a list of factors for a court to consider before approving a proposed settlement as "fair, reasonable, and adequate."  The factors are whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement is approvable. *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest"). *Accord UAW  v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) ; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015). The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 advisory committee note (2018 Amendment).

Accordingly, Plaintiffs will address the "fair, reasonable and adequate" factors under Rule 23(e)(2) and the Sixth Circuit's and this Court's prior preliminary approval decisions. A review of the factors supports preliminary approval of the Global Settlement.[4]

---

[4] Notably, the Court has already preliminarily approved settlements in many of the above-captioned cases (*i.e.*, *Air Conditioning Systems*, *Alternators*, *Fuel Injection Systems*, *Fuel Senders*, *Heater Control Panels*, *Ignition Coils*, *Instrument Panel Clusters*, *Power Window Motors*,

1. **The Class Representatives and Class Counsel Have Adequately Represented the Classes, and the Global Settlement was Reached at Arm's Length.**

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee Note. Relevant considerations may include the experience and expertise of plaintiffs' counsel, the quantum of information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorney's fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

The Plaintiffs and Settlement Class Counsel have adequately represented the proposed Settlement Classes in connection with the DENSO Global Settlement and the litigation in general. The Plaintiffs' interests are the same as those of the members of the respective Settlement Classes, and Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for DENSO, and importantly, with the assistance of a Court-appointed mediator. There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL

---

*Starters*, *Windshield Washers Systems*, *Windshield Wiper Systems* and *Wire Harness Products*). The Court should preliminarily approve the settlements in the Collective Actions with the DENSO Defendants for the same reasons that it preliminarily approved the other settlements.

6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *19-20 (E.D. Mich. Aug. 02, 2010). Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F.Supp.2d. 336, 341 (E.D. Pa. 2007).

The negotiations that led to the Global Settlement were at all times conducted at arm's length, took months to complete, and included a mediation before the Court-appointed mediator. In addition to the discovery conducted in the Collective Actions, relevant information about the various conspiracies has also been obtained from Defendants and through Settlement Class Counsel's investigation.[5]  This information and Settlement Class Counsel's legal analysis allowed Settlement Class Counsel to evaluate not only the strengths and weaknesses of the claims against the DENSO Defendants, but also the potential value of their promised cooperation.  Based on this information, Settlement Class Counsel believe that the proposed Global Settlement with DENSO

---

[5] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)). *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

is fair, reasonable, and in the best interests of the Settlement Classes, and their opinion supports

both preliminary (and final) approval of the settlement of all the Collective Actions.[6]

Because the proposed Global Settlement was negotiated at arm's length by experienced

counsel knowledgeable about the facts and the law, consideration of this factor fully supports

preliminary approval of the Global Settlement.

### 2.   The Relief Provided to the Settlement Classes is Adequate.

The relief provided to the proposed Settlement Classes reflects the fact that DENSO is the

ACPERA beneficiary in many of the Collective Actions.  In addition to the monetary component,

DENSO has agreed to provide substantial cooperation in the continued prosecution of the claims

against non-settling Defendants. Settlement Class Counsel believe that the monetary compensation

and cooperation is adequate relief for the Settlement Classes.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits

of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.

14 (1981). There are two reasons for this. First, the object of settlement is to avoid the

determination of contested issues, so the approval process should not be converted into an

abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second,

"[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor

of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* §30.42). This is

particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor*, 184

F.R.D. 93, 97 (W.D. Mich. 1998).

---

[6] There was no negotiation of attorney's fees.  At an appropriate time, Plaintiffs' counsel will file motions seeking awards of attorney's fees and expenses in the Collective Actions, to be paid solely out of settlement funds.

16

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 (quoting *Griffin*, 2013 WL 6511860). *Accord Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016). A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

### a.   The Costs, Risks, and Delay of Trial and Appeal.

When considering the adequacy of the relief to the class in determining the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015). These risks must be weighed against the settlement consideration: here, the certainty of the cash payments described above, plus cooperation, which is valuable to the members of the Settlement Classes as they continue to litigate against the remaining non-settling

Defendants. *See Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 12 ("cooperation strongly militates toward approval" of the settlements) (quoting *Linerboard*, 292 F. Supp. 2d 643).

Settlement Class Counsel believe that the Global Settlement is an excellent result. Weighing the settlement's benefits against the risks and costs of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9. Plaintiffs are optimistic about the likelihood of ultimate success in the Collective Actions, but success is not certain. While the DENSO Defendants have pleaded guilty in certain of the Collective Actions, as this Court has previously noted, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice. That is because, among other things, the DOJ is not required to prove class-wide impact or damages, both of which require complex and expensive expert analyses, and the outcome of litigating those issues is always uncertain. *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11. Moreover, DENSO is the ACPERA beneficiary in many of the Collective Actions.

DENSO is represented by highly experienced and competent counsel. DENSO undoubtedly would deny Plaintiffs' allegations of liability and damages and assert a number of defenses, and Plaintiffs believe DENSO is prepared to defend the cases through trial and appeal. Risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while optimistic about the outcome of this litigation, Plaintiffs must acknowledge the risk that DENSO could prevail with respect to certain legal or factual issues, which could reduce or eliminate any potential recovery.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs

would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

Plaintiffs are still litigating with the remaining non-settling Defendants, so it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation, as the remaining Defendants could seek to use any such disclosures against Plaintiffs going forward. Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for DENSO. Settlement Class Counsel believe that the proposed Global Settlement eliminates the risks, expense and delay with respect to a recovery from

19

DENSO, ensures a substantial payment to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the remaining non-settling Defendants. This factor also supports preliminary approval of the proposed Global Settlement.

### b. The Effectiveness of Any Proposed Method of Distributing Relief to the Classes, Including the Method of Processing Class Member Claims, if Required.

This case does not present any difficulties in identifying claimants or distributing settlement proceeds. Consistent with the practice in previously approved direct purchaser settlements, Settlement Class Counsel intend to propose that the net settlement funds be distributed pro rata to approved claimants. Claims will be processed using a settlement claims administrator to review claim forms, to assist Settlement Class Counsel in making recommendations to the Court concerning the disposition of those claims, and to mail checks to approved claimants for their pro-rata shares of the net settlement fund.

As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at *2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, §12.35, at 350 (4th ed. 2002) ("Newberg") (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). This Court, and numerous others, have approved similar pro-rata distribution plans. *See, e.g.,* 2:12-cv-00601, Doc. No. 172; 2;12-cv-00101, Doc. No. 572). This factor supports preliminary approval.

**c. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment.**

The settlement agreements in the Collective Actions provide that attorney's fees shall be paid solely out of settlement funds subject to court approval, and that final approval of the settlements is not contingent on the outcome of any petition for attorney's fees. *E.g.*, Exhibit 2 at ¶ 40. Settlement Class Counsel intend to seek attorney's fees of approximately 30% of the settlement funds, consistent with previous fee petitions and awards approved by this Court. This factor supports preliminary approval.

**d. Separate Agreements Relating to the Proposed Global Settlement.**

With the exception of the settlement agreement in the Ignition Coils case,[7] the settlement agreements in all of the other Collective Actions reflect all of the agreements and understandings relating to the proposed settlement, and there is no separate agreement that would affect the settlement amount, the eligibility of class members to participate in the settlement or exclude themselves from it, or the treatment of class member claims. This factor is therefore neutral.

**3. The Global Settlement Treats Class Members Equitably Relative to Each Other.**

Members of the proposed Settlement Classes will be treated equitably relative to each other in terms of their eligibility for a pro-rata portion of the settlement funds and their right to opt out. Likewise, each class member gives the same release.

The settlement agreements do contemplate that Settlement Class Counsel may seek an incentive award for the class representative(s), as has been done in other cases. Such awards are

---

[7] The parties have entered into a confidential letter agreement in the *Ignition Coils* case. That letter will be provided to the Court upon request. Notably, however, there is nothing in the confidential letter agreement that will reduce the portion of the Total Settlement Amount allocated to the proposed DENSO Ignition Coils Settlement Class.

justified as an incentive and reward for the efforts that lead plaintiffs take on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). The proposed settlements were provided to the class representatives in all of the Collective Actions for their review and approval without any discussion of incentive awards, which evinces that the prospect of such an award was not the reason the representative plaintiffs approved this settlement. *Hillson v. Kelly Servs. Inc.*, 2017 WL 279814, at *6 (E.D. Mich. 2017). Plaintiffs submit that this factor supports preliminary approval.

## 4. The Settlement is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205 (6th Cir. 1992). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of the above factors supports preliminary approval of the proposed DENSO Global Settlement. Settlement Class Counsel respectfully submit that the proposed Global Settlement is in the best interests of the Settlement Classes and should be preliminarily approved.

## V. PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASSES IS WARRANTED

Rule 23 as amended now explicitly requires the Court to determine whether it is likely to be able to certify the proposed settlement class for purposes of judgment on the settlement proposal. Fed. R. Civ. P. 23(e)(1)(B). It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24. At this juncture, the Court need only decide that certification

22

of the proposed Settlement Classes is "likely" in order to justify sending notice to members of the Settlement Classes. Plaintiffs will later seek final approval of the Settlement Classes for purposes of the Global Settlement and underlying settlement of the Collective Actions. *See Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-17. As they did with their analysis of preliminary approval of the Global Settlement, Plaintiffs will address here the factors for final certification of the Settlement Classes. *See Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[8]

As demonstrated below, the proposed Settlement Classes meet all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes, and therefore it is likely that the Court will be able to certify the proposed Settlement Classes.

### A.    The Proposed Settlement Classes Satisfy Rule 23(a).

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

---

[8] Paragraph 10 of the proposed DENSO Preliminary Approval Order provides that provisional certification of the Settlement Classes will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

### 1.   The Proposed Settlement Classes are Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that a "substantial" number of class members satisfies numerosity). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, Settlement Class Counsel believe that there are numerous direct purchasers of the auto parts that are the subject of all the Collective Actions, geographically dispersed throughout the United States. Thus, joinder of all members of the proposed Settlement Classes would be impracticable, satisfying Rule 23(a)(1).

### 2.   There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation."  *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement."  *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999)

(citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an agreement to artificially fix prices of the auto parts that are the subject of the Collective Actions is a factual question common to all members of the proposed Settlement Classes because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on Class members. *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3. Plaintiffs' Claims are Typical of Those of the Proposed Settlement Classes.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at *19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other members of the

Settlement Classes, namely, the Defendants' alleged violations of the antitrust laws. Plaintiffs and the Settlement Classes are proceeding on the same legal claims and same alleged violations of Section 1 of the Sherman Antitrust Act. *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Classes.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed representatives of the Settlement Classes are the same as those of other members of the Settlement Classes. Plaintiffs are direct purchasers of the parts that are the subject of the Collective Actions from one or more of the Defendants in the United States. Plaintiffs and the other members of the Settlement Classes claim that they were injured as a result of the alleged conspiracies and seek to prove that Defendants violated the antitrust laws. Plaintiffs' interests are thus aligned with those of the Settlement Classes.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[9] Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Classes in the

---

[9] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* direct purchaser cases. They submit

settlement negotiations with the DENSO Defendants and have vigorously prosecuted these actions. Adequate representation under Rule 23(a)(4) is therefore satisfied.

**B.      Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), Plaintiffs must show that the putative classes fall under at least one of the three subsections of Rule 23(b). Here, the Settlement Classes qualify under Rule 23(b)(3), which authorizes class certification if [1] "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… [2] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

**1.      Common Legal and Factual Questions Predominate.**

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at 6; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208,

---

that, for the same reasons that the Court appointed them to those positions, their appointment as Co-Lead Settlement Class Counsel is appropriate.

2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'…. Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."  527 F.3d at 535 (emphasis in original).

In the Collective Actions the same core set of operative facts and theory of liability apply across the Settlement Classes. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of the parts that are the subject of the Collective Actions is a question common to all members of the Settlement Classes because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Plaintiffs and the other members of the Settlement Classes were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2.     A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All litigation regarding the Collective Actions has been centralized in this Court. If any members of the Settlement Classes want to control their own litigation, they can request exclusion

from the appropriate Settlement Class. Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial. *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Classes are not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)). Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Classes. *See, e.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury."). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

### C.     Plaintiffs Are Not Seeking Authorization To Send Notice At This Time.

As recently amended, Rule 23(e) frames the preliminary approval inquiry as a decision about whether to notify the class about the settlement. *See* Fed. R. Civ. P. 23(e)(1)(A) ("The parties

must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class"). Settlement Class Counsel are not seeking leave to disseminate notice at this time. Rather, in the interests of economy and efficiency, and consistent with settlements involving fewer than all defendants in some of the other cases, Settlement Class Counsel propose deferring class notice and the distribution of claim forms until a later date with a view towards possibly combining notice of more than one settlement. For example, in *Wire Harness Products*, settlement notice regarding some of the early settlements was deferred in order to save money for the Settlement Class and avoid the potential for confusion caused by multiple notices. *See* Motion for Authorization to Disseminate Notice to Direct Purchaser Settlement Classes of Proposed Settlements with Chiyoda, Fujikura, Leoni, Sumitomo, and Yazaki Defendants, and Related Matters, 2:12-cv-00101 (Doc. No. 469).

The 2018 Amendments to Rule 23 spell out the required contents of a class notice and the factors a court must evaluate in determining whether the proposed notice is "the best notice that is practicable under the circumstances," but do not specify the timing of notice. Fed. R. Civ. P. 23(c)(2)(B). The timing of class notice is thus within the discretion of the Court. *Beale v. EdgeMark Financial Corp.*, No. 94-C-1890, 1995 WL 631840, at *4 (N.D. Ill. Oct. 23, 1995); *Harris v. Reeves*, 761 F. Supp. 382, 393 (E.D. Pa. 1991). At an appropriate time, Settlement Class Counsel will submit for Court approval the proposed forms of notices and plans for dissemination that will most likely hew very closely to the settlement class notices the Court has approved in prior direct purchaser settlements.

Deferring notice will not prejudice members of the proposed Settlement Classes, who are not bound by any judgment or release until they have received notice and an opportunity to exclude themselves or object. In the meantime, members of the Settlement Classes will benefit from the

cooperation that DENSO has promised. For these reasons, Plaintiffs respectfully request that the Court grant preliminary approval to the proposed Global Settlement, but defer decisions about the content, methods, and timing of notice.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the DENSO Global Settlement and provisionally certify the proposed Settlement Classes.

DATED: April 2, 2019                    Respectfully submitted,


                                         /s/David H. Fink
                                        David H. Fink (P28235)
                                        Nathan J. Fink (P75185)
                                        FINK BRESSACK
                                        38500 Woodward Ave; Suite 350
                                        Bloomfield Hills, MI 48304
                                        Telephone: (248) 971-2500

                                        *Interim Liaison Counsel for the Direct*
                                        *Purchaser Plaintiffs*

Steven A. Kanner                        Joseph C. Kohn
William H. London                       William E. Hoese
Michael E. Moskovitz                    Douglas A. Abrahams
FREED KANNER LONDON                     KOHN, SWIFT & GRAF, P.C.
  & MILLEN LLC                          1600 Market Street, Suite 2500
2201 Waukegan Road, Suite 130           Philadelphia, PA 19103
Bannockburn, IL 60015                   Telephone: (215) 238-1700
Telephone: (224) 632-4500

Gregory P. Hansel                       Eugene A. Spector
Randall B. Weill                        William G. Caldes
Michael S. Smith                        Jeffrey L. Spector
PRETI, FLAHERTY, BELIVEAU               SPECTOR ROSEMAN & KODROFF, P.C.
  & PACHIOS LLP                         Two Commerce Square
One City Center, P.O. Box 9546          2001 Market Street, Suite 3420
Portland, ME 04112-9546                 Telephone: (215) 496-0300
Telephone: (207) 791-3000

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2019, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

<div style="margin-left: 50%;">

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
nfink@finkbressack.com

</div>